UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARCUS TODD EDWARDS, JR.,

    Plaintiff,

v.                                                                        CASE NO. 3:16-cv-770-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his re-application for supplemental security income ("SSI") upon turning 18 years-old after previously being awarded SSI benefits. In his initial application, Plaintiff alleged that he became disabled on October 1, 2009. (Tr. 198-201.) In March 2010, Plaintiff was found disabled and entitled to SSI benefits. (Tr. 22.) In April 2012, the agency reviewed Plaintiff's eligibility for SSI under the rules for determining disability in adults when Plaintiff attained the age of 18, and the agency determined that Plaintiff was no longer disabled as of April 1, 2012. (Tr. 22, 90.) The agency upheld the redetermination on reconsideration. (Tr. 91.) A hearing was held before an Administrative Law Judge ("ALJ") on November 4, 2014. (Tr. 40-89.) On November 19, 2014, the ALJ rendered a

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 12, 15.)

decision finding Plaintiff not disabled as of April 1, 2012. (Tr. 22-33.) Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Appeals Council denied review of the decision. (Tr. 1-6.)

Plaintiff is appealing the Commissioner's decision that he was not disabled during the relevant time period. Plaintiff has exhausted his available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the undersigned determines that the Commissioner's decision is due to be **AFFIRMED**.

**I.  Standard of Review**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937

F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff argues two general points on appeal.  First, Plaintiff argues that the ALJ erred in evaluating whether he met Listing 12.05(C) with respect to his intellectual impairments.  Namely, Plaintiff argues that the ALJ's finding that Plaintiff does not have a severe "other impairment" is contrary to binding Eleventh Circuit precedent.  Second, Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence.

Defendant responds that the ALJ's determination that Plaintiff's impairments did not meet Listing 12.05(C) is supported by substantial evidence because the record shows that Plaintiff's impairments failed to meet the fundamental criterion for Listing 12.05(C).  Moreover, Defendant responds that the ALJ applied the proper legal standards for evaluating Plaintiff's credibility and the ALJ's credibility decision is supported by substantial evidence

### A. The ALJ's Decision

The ALJ determined that since April 1, 2012, Plaintiff had severe

impairments, including osteochondromas/Multiple Hereditary Exostoses ("MHE") and borderline intellectual functioning. (Tr. 24.) The ALJ then determined that since April 1, 2012, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 25)

Continuing on with the evaluation, the ALJ made the following residual functional capacity ("RFC") determination:

> [T]he undersigned finds that since April 1, 2012, the claimant has had the [RFC] to perform medium work as defined in 20 CFR 416.967(c) with the following non-exertional mental limitations. He has poor ability to read, write, and use numbers. He is limited to simple, routine tasks with no intense or prolonged social contact; therefore, is limited to only brief, occasional superficial contact with others. He can have no production quotas, time pressures, or deadlines; only gradually introduced changes; and needs help setting goals.

(Tr. 26.) In making this finding, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible for the reasons explained in the decision. (Tr. 28.)

With the benefit of testimony from the VE, the ALJ determined that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy. (Tr. 32.) As such, the ALJ found that Plaintiff's disability ended on April 1, 2012, and that Plaintiff has not become disabled again since that date.

4

(*Id.*)

## B. Substantial Evidence Supports the ALJ's Step 3 Findings

Plaintiff contends that the ALJ erred in determining that Plaintiff no longer met Listing 12.05(C).  Specifically, Plaintiff contends that the ALJ accepted Plaintiff's full-scale IQ score of 70 and made no findings with respect to whether Plaintiff had deficits in adaptive functioning, but erred in concluding that Plaintiff failed to meet Listing 12.05(C) because he did not have an additional physical or mental impairment that imposes an additional and significant work-related limitation of functioning.  Plaintiff reasons that the ALJ should have determined that Plaintiff had another physical impairment that imposes an additional and significant work-related limitation of functioning because the ALJ found Plaintiff's osteochondromos/MHE to be a "severe" impairment, in accordance with Eleventh Circuit case law that mandates such a determination.

The Commissioner agrees with Plaintiff's argument with respect to Plaintiff's "other" impairment, but contends that the ALJ's error is harmless because substantial evidence supports the determination that Plaintiff does not meet Listing 12.05(C) in that Plaintiff does not meet the fundamental requirements of the Listing.  The undersigned agrees with the Commissioner.

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person

from working.  *Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir. 1993).  Plaintiff bears the burden of showing that his or her condition meets or equals a Listing.  *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987); *Castle v. Colvin*, 557 F. App'x 849, 852 (11th Cir. 2014).

In order to prove that his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id*.  "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'"  *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted).  When a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience.  20 C.F.R. § 416.920(d).

An ALJ's finding as to whether a claimant meets a listed impairment need not be explicit and may be implied from the record.  *See Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).  Further, although an ALJ must consider the Listings in the decision, the ALJ is not required to mechanically recite the evidence leading to the ultimate determination.  *Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 920 (11th Cir. 2015) (citing *Hutchison*, 787 F.2d at 1463)).

Listing 12.05 provides in relevant part:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning[2] initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>     . . .
> C.    A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Thus, for an impairment to meet the requirements of Listing 12.05(C), there must be deficits in adaptive functioning initially manifested prior to age 22, as well as both an IQ score in the range of 60 to 70 and a physical or other mental impairment. *Id.*

In 2001, the Eleventh Circuit held that "there is a presumption that mental retardation is a condition that remains constant throughout life." Hodges v. Barnhart, 276 F.3d 1265, 1266 (11th Cir. 2001). Because of this presumption, a plaintiff who demonstrates valid IQ scores after the age of 22 in the range provided for in Listing 12.05 does not need to show evidence that deficits in adaptive functioning manifested before age 22. *Id.* Instead, valid low IQ scores

---

[2] "Adaptive functioning" refers to an "individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age." POMS DI 24515.056(D)(2). The Diagnostic and Statistical Manual of Mental Disorders ("DSM") states that adaptive functioning "refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociological background, and community setting." DSM-IV-TR at 42.

after the age of 22 create a presumption that the plaintiff had deficits in adaptive functioning manifested prior to age 22. *Id.* at 1269.

Even if a plaintiff demonstrates low IQ scores, however, the Commissioner may rebut the presumption of mental impairment before age 22 by presenting evidence of Plaintiff's daily life. *Id.* "[A] valid [IQ] score need not be conclusive of mental retardation where the [IQ] score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery*, 979 F.2d at 837. As the Eleventh Circuit explained in *Popp v. Heckler*:

> [The intellectual disability listing] does not require the Secretary to make a finding of [intellectual disability] based on the results of an IQ test alone. *See Strunk v. Heckler*, 732 F.2d 1357, 1360 (7th Cir.1984) ("The plaintiff has failed to supply this court, nor have we found any case law requiring the Secretary to make a finding of [intellectual disability] based *solely* upon the results of a standardized intelligence test in its determination of mental retardation"). The listing requires the Secretary to take into account the intelligence test *and* the medical report. Moreover, the test results must be examined to assure consistency with daily activities and behavior. Thus, in the instant case, it was proper for the ALJ to examine the other evidence in the record in determining whether Popp was in fact [intellectually disabled].

779 F.2d 1497, 1499 (11th Cir. 1986) (per curiam) (emphasis in original). As the *Popp* court recognized, the Listing itself provides that an IQ score is not necessarily determinative of intellectual disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(a) ("The results of standardized intelligence tests may provide data that help verify the presence of intellectual disability or organic mental disorder, as well as the extent of any compromise in cognitive functioning.

8

However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.").

Here, the ALJ's misstatement that Plaintiff "does not have a physical or other mental impairment imposing an additional and significant work-related limitation of function" (Tr. 25), does not end the inquiry. *See Hutchison*, 787 F.2d at 1463 ("There may be an implied finding that a claimant does not meet a listing.") The ALJ discussed Plaintiff's full-scale IQ score of 70 based on Dr. Yates's January 3, 2014 Report of Psychological Evaluation, but also appropriately considered and addressed the narrative included within the report. *Popp*, 779 F.2d at 1499 ("The listing requires the Secretary to take into account the intelligence test *and* the medical report.") (emphasis added). The ALJ referenced Dr. Yates's diagnosis of borderline intellectual functioning (Tr. 25, 30), which is a diagnosis that is mutually exclusive of mental retardation or intellectual disability. *Jordan v. Comm'r of Soc. Sec.*, 470 F. App'x 766, 768 (11th Cir. 2012);[3] *see also Smith v. Comm'r of Soc. Sec.*, 535 F. App'x 894, 897 (11th Cir. 2013) (recognizing that a diagnosis of borderline intellectual functioning was insufficient to satisfy the diagnostic criterial of Listing 12.05(C)). The ALJ also

---

[3] In the Eleventh Circuit, "[u]npublished decisions are not binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

discussed Dr. Yates's observations of Plaintiff's appropriate behavior and stronger working memory skills (Tr. 25, 548, 549), as well as Dr. Yates's finding that although Plaintiff's extremely slow psychomotor output was in the mild range of mental retardation, such output "seem[ed] to represent more of a reflection of [Plaintiff's] work style than any significant weakness" (Tr. 26, 549). *See Popp*, 779 F.2d at 1499-1500 (affirming the ALJ's conclusion that the plaintiff does not meet Listing 12.05 where substantial evidence supports the ALJ's finding that the plaintiff did not have an intellectual disability); *Smith*, 535 F. App'x at 897 (holding that substantial evidence supports the ALJ's conclusion that Plaintiff did not meet Listing 12.05(C) where the record supports the conclusion that the plaintiff's IQ scores constituted an underestimation of the plaintiff's actual level of functioning).

Moreover, while the ALJ did not make an explicit finding with respect to whether Plaintiff had deficits of adaptive functioning, the ALJ made an express finding that Plaintiff only had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, and pace. (*See* Tr. 26.); *see also Rodriguez v. Comm'r of Soc. Sec.*, 633 F. App'x 770, 774 (11th Cir. 2015) ("[A]lthough the Social Security regulations do not define 'deficits in adaptive functioning,' the Diagnostic and Statistical Manual of Mental Disorders states that adaptive functioning refers 'to how well a person meets standards of personal

independence and social responsibility, in comparison to others of similar age and sociocultural background. Adaptive functioning involves adaptive reasoning in three domains: conceptual, social, and practical.'") (citation omitted). The ALJ discussed Plaintiff's multiple reported daily activities, such as taking care of personal needs, being able to cook simple meals and do laundry, vacuuming, washing dishes, being able to shop, visiting with his cousin three times per week, watching television, being able to use public transportation, taking out trash, playing video games, and playing basketball. (Tr. 25, 57, 58, 59, 60-61, 247, 447, 476.) The ALJ also noted that a teacher reported in March 2012 that Plaintiff had less than serious problems in acquiring and using information, as well as no problems in interacting and relating with others, moving about and manipulating objects, and caring for himself.[4] (Tr. 25, 240, 242.) In sum, substantial evidence supports the ALJ's conclusion that, despite Plaintiff's IQ scores, he did not meet or equal the criteria of Listing 12.05(C).

### C. The ALJ Properly Evaluated Plaintiff's Credibility

Plaintiff next argues that the ALJ's evaluation of Plaintiff's credibility is not supported by substantial evidence. The Eleventh Circuit has established a three-part "pain standard" that applies when a claimant seeks to establish disability through his own testimony of pain or other subjective symptoms. *Holt v. Sullivan*,

---

[4] The teacher also reported that Plaintiff had no problems or only slight problems in 10 out of the 13 subcategories of "Attending and Completing Tasks." (Tr. 241.)

921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id.*

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that her "pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain," pursuant to 20 C.F.R. § 416.929(a) "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561; *see also* SSR 96-7p (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities").

When a claimant's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the

individual's statements based on a consideration of the entire case record." SSR 96-7p.

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.[5] The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Id.*

"[C]redibility determinations are the province of the ALJ," *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court," *Foote*, 67 F.3d at 1562.

---

[5] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures used to relieve the pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3); SSR 96-7p.

The Court finds that the ALJ provided a clearly articulated credibility finding with substantial supporting evidence. Here, the ALJ noted Plaintiff's subjective complaints of pain and found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of such symptoms are not entirely credible for the reasons explained in the decision. (Tr. 28.) The ALJ continued with the analysis, referencing the probative record evidence and articulating explicit reasons for discounting Plaintiff's credibility. (Tr. 28-31.)

For example, the ALJ noted the routine and conservative treatment Plaintiff received. (Tr. 31.) Plaintiff testified that he only takes Tylenol for pain and that no other medications have been prescribed by Plaintiff's treating physicians for his physical impairments other than Albuterol. (Tr. 55, 469, 470-71, 524, 528, 544.) Although Plaintiff underwent multiple excisions of bony growths from 2006 through the date of the decision (Tr. 52, 563-64), records subsequent to the excisions indicate many routine or follow-up appointments (Tr. 470 (September 15, 2012 progress note indicating a "follow up of right medial knee exostectomy 12/22/11," and instructing Plaintiff to "[r]eturn to clinic in 6 months"), 471 (January 23, 2013 progress note indicating that "[Plaintiff] returns for routine follow-up," noting that Plaintiff "has been doing well since his OR date," and instructing

14

Plaintiff to follow up in 4 months), 524 (October 23, 2013 progress note indicating that Plaintiff "returns for follow up of MHE," and instructing Plaintiff to return in one year for x-rays of both knees, pelvis and left shoulder"), 536-38 (November 6, 2011 progress note indicating a follow-up appointment after a knee MRI and instructing "[f]ollow-up as needed").)[6]

While Plaintiff admits to the lack of medications prescribed, he contends that his young age precluded the use of narcotics for pain. However, as the Commissioner points out, Plaintiff provided no further support for such contention.

The ALJ also referenced the inconsistency between Plaintiff's testimony and the treating records for discrediting Plaintiff's complaints. The ALJ specifically pointed out that Plaintiff's treating physicians did not impose functional limitations as a result of Plaintiff's physical impairments. (Tr. 31.) The ALJ further noted the gaps in Plaintiff's treatment history, specifically noting significant gaps in medical records. (Tr. 31, 444-62, 508-22 (indicating a gap in treatment from July 2009 to October 2011), 466-80 (indicating a gap in treatment from February 2012 to September 2012).)

As discussed above with respect to Plaintiff's mental impairments, the ALJ re-iterated Plaintiff's multiple activities of daily living. (Tr. 25, 57, 58, 59, 60-61,

---

[6] Plaintiff did return sooner than a scheduled follow-up on March 18, 2013, with complaints of pain. (Tr. 527.) However, the "primary complaint" noted was left shoulder pain and not knee or leg pain, which was the main source of his complaints when testifying (Tr. 49-56).

247, 447, 476.)  Finally, the ALJ properly considered Plaintiff's demeanor at the hearing in conjunction with the other record evidence and found it inconsistent with his complaints of pain.  *See, e.g., Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987) (holding that the ALJ may consider the demeanor of the claimant during a hearing).

Plaintiff contends that objective evidence verifies his complaints of pain and the ALJ erred in failing to address such objective evidence.  The record reflects, however, that the ALJ considered and discussed the objective evidence at length, and substantial evidence supports the ALJ's conclusion that such evidence did not verify Plaintiff's complaints of pain.  (Tr. 28-30, 471 (noting that Plaintiff "has been doing well since his OR date [December 2011]"), 476 (noting multiple palpable prominences, but none that are particularly bothersome and reporting "non tender to palpitation," normal distal motor function, intact sensation, and normal gait), 524 (reporting that x-rays of the left knee in October 2013 revealed "multiple exostoses, no change from [March 2013] x-rays"), 533 (noting that right knee x-rays from January 2013 revealed "stable exostosis from previous exam"), 528 (reporting that March 2013 x-rays of both knees, left shoulder, and pelvis revealed "[n]o evidence of fracture or other acute pathology"), 536-38 (reporting that October 23, 2012 MRI of left knee showed "a stable knee and no MRI evidence of cruciate ligament injury.  No intrinsic knee pain with ROM"), 552 (July

16

30, 2014 x-rays of pelvis indicating "[u]nchanged findings of MHE without acute complication), 561 (reporting that May 2014 x-rays of the left knee revealed "multiple osteochondromas, which appear stable in comparison to prior films").

### III.    Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  Based on this standard of review, the undersigned affirms the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question.

Accordingly, it is **ORDERED**:

1.    The Commissioner's decision is **AFFIRMED**.

2.    The Clerk of Court is directed to enter judgment accordingly and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on September 7, 2017.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record